UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KEVIN PLANKER, et al.,

　　　　Plaintiffs,

v.

LAWRENCE ATKINS, et al.,

　　　　Defendants.

Civ. No. 20-4264 (MCA)

**OPINION & ORDER**

　　　　Plaintiff Kevin Planker has filed an 114-page Amended Complaint, ECF No. 9-2, that attempts to bring sweeping claims on behalf of prisoners practicing "Organic Asatru" ("Asatru") and former prisoners practicing Asatru as parolees.[1] Plaintiff principally claims that he and other prisoners practicing Asatru within the New Jersey Department of Corrections ("NJDOC") are being denied opportunities and various religious items and accommodations necessary to practice their Asatru religious faith and that the NJDOC has made such accommodations for other religious faiths. Plaintiff previously sought leave to submit an Amended Complaint, *see* ECF No. 9, and the Court deems the Amended Complaint, ECF No. 9-2, to be the operative complaint in this action.

　　　　Although Planker paid the filing fee, he subsequently sought and received IFP status. ECF No. 11. At this time, the Court screens Plaintiff's Amended Complaint, ECF No. 9-2, for dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B). Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to

---

[1] The complaint even mentions several "plaintiffs," who are now deceased and allegedly died of opioid addiction. *See* Am. Complaint at ¶ 42.

state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

As noted in the Court's prior decision, the original complaint is purportedly signed by a former prisoner named Ryan Pittinger, who was released from the NJDOC in 2020. Prior to screening the Amended Complaint, the Court required Pittinger respond in writing as to whether he intended to proceed in this action. That Order was returned as undeliverable to Pittinger, and the Court deems the action withdrawn <u>without prejudice</u> as to this Plaintiff. *See* ECF Nos. 11, 17.

The Amended Complaint also alleges that Gary Tozzi, a former prisoner within the NJDOC, is a plaintiff in this action. *See id.* at ¶ 5. The Complaint contends that Tozzi is filing the complaint on behalf of himself and other civilians who are attempting to practice Asatru on probation and parole. *Id.* The Complaint states that Tozzi is seeking religiously acceptable medical treatment, a religious diet, natural cosmetics and detergents, ritually appropriate food preparations, religious items, areas, and conditions necessary to practice their religious beliefs. Tozzi, however, has not signed the Amended Complaint, and the Court does not consider him to be a plaintiff in this action.

The Amended Complaint also lists 175 prisoners who purportedly practice Asatru and contends that there are over 400 prisoners who have practiced Asatru within the NJDOC over an unspecified time period. *Id.* at 6. None of these prisoners have signed the Amended Complaint, and the Court does not consider them to be plaintiffs in this matter.

Plaintiff has also filed a motion to amend seeking to add another <u>former prisoner,</u> Kyle Powell, to the Complaint as a Plaintiff. *See* ECF Nos. 12-14. Powell presumably would replace Pittinger to "represent" former prisoners who are seeking to practice Asatru while on parole. A

pro se prisoner, however, cannot represent a putative class. *Lewis v. City of Trenton Police Dep't*, 175 F. App'x 552, 554 (3d Cir. 2006) ("Lewis, who is proceeding pro se, may not represent a putative class of prisoners."). Moreover, the allegations about former prisoners in the Amended Complaint are not specific to Powell (or Planker), are conclusory at best, and do not state claims for relief against any Defendants.[2] The Court therefore denies without prejudice the request to add Powell as a Plaintiff in this action and also dismisses without prejudice all claims in the Amended Complaint related to former prisoners seeking to practice Asatru while on parole/probation.

Planker also seeks to add James Gallichio who is presently incarcerated at South Woods State Prison. ECF Nos. 16, 16-2. Gallichio states generally that he "has believed in the religion of Asatru for several years while incarcerated in the New Jersey Department of Corrections" and met Planker while both were housed in Administrative Segregation at New Jersey State Prison. *See* ECF No. 16-2. Although Gallichio claims to have "contributed" to the Complaint, he provides no other facts from which the Court could conclude that he shares Planker's sincerely-held religious beliefs regarding Organic Asatru, and the Amended Complaint and Gallichio's Declaration are silent about Gallichio's belief system. As such, the Court denies the motion to amend to add Gallichio as a Plaintiff in this action.

Planker, as a pro se plaintiff, also cannot represent a putative class. *See Lewis*, 175 F. App'x at 554. As explained below, the Court intends to proceed certain claims and Defendants in the Amended Complaint.[3] After Planker completes the forms to serve Defendants, he may file a

---

[2] The Amended Complaint briefly mentions Powell and alleges that Dr. Brantley interfered with Powell's attempts to obtain a Thor's Hammer and Asatru literature in April or May of 2020. *See* Am. Complaint at ¶ 213. This incident occurred more than two years prior to Planker's motion to add Powell as a plaintiff in September 2022. Powell has not provided a sufficient basis to be added to the Complaint at this late date, which is beyond the 2-year limitations period for asserting his specific § 1983 claims.

[3] The Court denies Planker's motion for a hearing as premature. *See* ECF No. 15.

formal motion for pro bono counsel and set forth the reasons why counsel should be appointed in this matter. If counsel is appointed, he or she would decide whether to seek class action treatment or move to add additional plaintiffs to the case. At this juncture, however, <u>Planker is the only Plaintiff in this matter</u>.[4]

Planker is currently an inmate at South Woods State Prison ("SWSP"). He has been incarcerated for over twenty years within the NJDOC. According to the Amended Complaint, he was incarcerated at New Jersey State Prison ("NJSP") from 1999-2017, transferred to Northern State Prison ("NSP") and East Jersey State Prison ("EJSP") between 2017 and 2021, and transferred to SWSP or about September 27, 2021. *See* Am. Complaint at ¶ 4. Planker alleges that he requested to practice "Organic Asatru" at each facility but was denied by Warren Wilcox at NJSP, Reverend Dr. Brantley at NSP, Reverend Lawrence Atkins at EJSP, and Reverend Philip Harden at SWSP. *See id*. According to Plaintiff, Defendants Atkins, Brantley, Wilcox, Hines, Amir[5] and Harden denied him the ability to practice Asatru as it is approved for practice within the NJDOC. *Id.* at ¶ 39. Planker further alleges that he has not be able to practice Organic Asatru "as it has been approved by the New Jersey Department of Corrections since 2004" or the way he has requested to practice it.[6] Plaintiff contends that "other groups" both religious and nonreligious

---

[4] The Amended Complaint refers to "plaintiffs" throughout. In light of Planker's pro se status, the Court construes him to make claims on his own behalf wherever possible.

[5] Reverend Hines and Tariq Ameer are Chaplains at NSP.

[6] According to the Complaint, there is an internal management procedure ("IMP") at NJDOC since 2004 or 2006, which allows Asatru prisoners to engage in congregate gatherings to perform rites called "blot" and "sumbel", be provided a substitute for "Mead", be provided 31 holidays (4 of which must occur during the solstices or equinoxes), be permitted to obtain numerous ritual elements that must be brought into the prisons, and perform specific rights during the other holidays on the nearest Saturday or during regularly scheduled congregate gatherings. Am. Complaint at ¶ 40. Although limited gatherings are allowed, many specific rituals are not permitted at the gatherings and there is insufficient space and time allotted to perform the rituals. The only holy days recognized are the solstices and equinoxes. Planker claims that he has filed grievances but "no single Asatru service has taken place as it is approved." *Id.* at 40. The

have been given preferential treatment. *Id.* ¶ 4. Plaintiff appealed to the Religious Issues Committee after the NJDOC administration upheld the chaplains, and he also appealed to the Commissioner's Office and the Central Office. *Id.* Plaintiff alleges that he "has not been able to perform a single Asatru rite" during his incarceration. *Id.*

With respect to the denial of Planker's religious freedom, the Court liberally construes the Amended Complaint to assert violations of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 ("RLUIPA"), the First Amendment right to free exercise of religion and the First Amendment Establishment Clause, and the Fourteenth Amendment right to equal protection.[7]

---

Complaint states that "others" are given everything in the IMPs. *Id.* The Complaint alleges that Asatru prisoners have repeatedly asked for the IMP to be expanded so they can practice their sincerely-held religious beliefs, but no accommodations have been made even though accommodations have been made for "similarly situated" groups. *Id.* at 42. Planker has requested these accommodations at NJSP, EJSP, NSP, and SWSP. *Id.* Examples of accommodations that have been requested and denied include but are not limited to organic diet, vegan diet, natural medical and mental health treatment, and outdoor ambulation. *Id.*

[7] To the extent Plaintiff is asserting that the denial of religious freedom violates his Eighth Amendment rights, those claims are dismissed without prejudice because none of the religious deprivations described in the Amended Complaint rise to the level of Eighth Amendment violations. "The Eighth Amendment's prohibition on 'cruel and unusual punishment' ... imposes on [prison officials] a duty to provide 'humane conditions of confinement.'" *Betts v. New Castle Youth Development*, 621 F.3d 249, 256 (3d Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). That is, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). For an alleged deprivation to rise to the level of an Eighth Amendment violation, it must "result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* at 835 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1982)). A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of the minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

RLUIPA prohibits the government from imposing a "substantial burden" on a prisoner's religious exercise unless that burden furthers a compelling interest and is the least restrictive means of furthering that interest. *See* 42 U.S.C. § 2000cc-1(a)(1)–(2). A substantial burden exists where (1) "a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit"; or (2) "the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007). Therefore, to establish a prima facie case of a RLUIPA violation, a prisoner must initially demonstrate that a substantial burden has been placed on his or her exercise of religious beliefs. *See Robinson v. Sup't Houtzdale SCI*, 693 F. App'x 111, 115 (3d Cir. 2017) (per curiam) ("The threshold question in any ... RLUIPA case is whether the prison's challenged policy or practice has substantially burdened the practice of the inmate-plaintiff's religion.") (citing *Washington*, 497 F.3d at 277–78).

RLUIPA permits a plaintiff to "obtain appropriate relief against a government." *Sharp v. Johnson*, 669 F.3d 144, 153 (3d Cir. 2012) (citing 42 U.S.C. § 2000cc-2). The statute defines "government" to include state entities, their agencies, and any other person acting under color of state law. *See id.* (citing 42 U.S.C. § 2000cc-5(4)(A)). Thus, RLUIPA applies to state agencies and to employees acting in their official capacities, but not their individual capacities. *See id.*; *Mack v. Warden Loretto FCI*, 839 F.3d 286, 303 (3d Cir. 2016) ("[S]tate officials ... cannot be held individually liable under RLUIPA"); *Spada v. Klemm*, No. 1:22-CV-00478, 2023 WL 2290258, at *6 (M.D. Pa. Feb. 28, 2023) ("RLUIPA does not permit an action against state officials in their individual capacities."). Moreover, a plaintiff may not sue a state or state official for monetary damages under RLUIPA. *See Sossamon v. Texas*, 563 U.S. 277, 288, 293 (2011)

(holding that states, by accepting federal funds, do not waive their sovereign immunity to suits for money damages under RLUIPA).

"The Free Exercise Clause of the First Amendment provides that 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof....'" U.S. Const. amend. I. *Sutton v. Rasheed*, 323 F.3d 236, 250–51 (3d Cir. 2003), as amended (May 29, 2003). "Inmates clearly retain protections afforded by the First Amendment, ... including its directive that no law shall prohibit the free exercise of religion." *DeHart v. Horn*, 227 F.3d 47, 50 (3d Cir. 2000) (quoting *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted)). "[O]nly those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." *Id.* at 51-52 (citing *Africa v. Pennsylvania*, 662 F.2d 1025, 1029–30 (3d Cir. 1981)). Assuming a sincerely held religious belief is established, "a prison inmate 'retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'"[8] *Id.* (quoting *Pell v. Procunier*, 417 U.S. 817, 822–23 (1974)).

The Equal Protection Clause of the Fourteenth Amendment provides that '[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws.'" *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015), *as amended* (Feb. 2, 2016) (quoting U.S. Const.

---

[8] The test announced in *Turner v. Safley* applies to an inmate's free exercise of religion claim. *Dehart*, 227 F.3d at 51. Thus, "'[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Id.* (quoting *Turner v. Safely*, 482 U.S. 78, 89 (1987)). "[U]nder the Turner framework, four factors must be considered in assessing the reasonableness of such regulations." *Fraise v. Terhune*, 283 F.3d 506, 516 (3d Cir. 2002). Those factors are (1) whether there is a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it[;] (2) whether "there are alternative means of exercising the right that remain open to prison inmates[;] (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally[;]" and (4) the existence or absence "of ready alternatives...." *Id.* at 89-90. The Court declines to conduct this analysis at screening.

Amend. XIV, § 1.) "To prevail on an equal protection claim, a plaintiff must present evidence that he has been treated differently from persons who are similarly situated." *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). The plaintiff must also allege intentional discrimination. *Robinson*, 693 F. App'x at 118. "[I]ntentional discrimination based on religious affiliation must survive heightened equal-protection review." *Hassan,* 804 F.3d at 301. To state a claim, the plaintiff's "religious affiliation must have been a substantial factor in that different treatment."[9] *Id.* at 294 (citing *Washington*, 426 U.S. at 235; *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 276 (1979)).

From the outset, the State, its agencies, and its officials sued in their official capacities for damages are not "persons" under § 1983. *See Will v. Michigan Dept. of State Police*, 109 S.Ct. 2304, 2312, 491 U.S. 58, 71 (U.S.Mich.,1989) (We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.) As such, the § 1983 claims against the State and its officials in their official capacities are dismissed with prejudice.

The Court, however, will permit the First Amendment and equal protection claims to proceed against Wilcox,[10] Brantley, Hines, Ameer, Atkins, Harden in their individual capacities for damages and in their official capacities for injunctive relief based on the detailed allegations against them in the Amended Complaint. The Court will also proceed First Amendment retaliation

---

[9] The Third Circuit has not determined whether heightened review of such claims involves strict scrutiny or an intermediate level of review. *Id.* at 301. Thus, at a minimum, more than a rational basis is required to permit intentional discrimination based on religion. Strict scrutiny applies to race-based discrimination claims. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995).

[10] The Court notes that the allegations against Defendant Wilcox occurred in 2016-2017, but Plaintiff appears to frame the violations of his religious freedom as a continuing violation. As such, the Court does not dismiss the claims against Wilcox at screening.

claims against Defendants Brantley, Hines, and Ameer based on discrete incidents of alleged retaliation Planker describes in detail in his Complaint.[11]

The Court will also permit the RLUIPA claims to proceed against the State of New Jersey/NJDOC for injunctive relief only. The Court dismisses the RLUIPA claims for damages on the basis of Eleventh Amendment immunity as to the State of New Jersey and all Defendants sued in their official capacities for damages. At this early stage, it is not clear who can provide injunctive relief to Plaintiff under RLUIPA, if warranted. The Court will also proceed the RLUIPA claims against Wilcox, Brantley, Hines, Ameer, Atkins, and Harden in their official capacities for injunctive relief only. The Court will also permit the RLUIPA claims to proceed against Victor Lee, Coordinator of Religious Services for the NJDOC, Michelle Ricci, Religious Issues Committee Member and Director of the Division of Operations for NJDOC, and Keisha Fischer, Administrator of SWSP (where Plaintiff currently resides), in their official capacities for injunctive relief only.[12]

Plaintiff has also sued Fischer, Lee, Ricci, and a number of other high-ranking supervisory prison and government officials, including former Commissioner of the NJDOC Marcus Hicks, Assistant Commissioner of the NJDOC Stephen D'Ilio, former Governor Chris Christie, and

---

[11] The elements of a retaliation claim for engaging in constitutionally protected conduct are "that: (1) [the plaintiff's] conduct was constitutionally protected; (2) [the plaintiff] suffered an adverse action at the hands of prison officials; and (3) [the plaintiff's constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citing *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2000)). A plaintiff can satisfy the third element "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Id.* (citation omitted).

[12] To the extent these Defendants no longer hold these positions or are not the persons who could provide injunctive relief for violations of Plaintiff's religious rights, Plaintiff may seek to substitute the appropriate Defendant who can provide that injunctive relief through a motion to amend.

Governor Phil Murphy, for deliberate indifference. Plaintiff's Complaint claims in a conclusory manner that these Defendants were "deliberately indifferent" to prison officials' refusal to permit him to practice Asatru.[13] *See, e.g.*, Amended Complaint at 39, 41. These conclusory allegations do not plausibly suggest the liability of these Defendants in their individual capacities for damages under §1983. *See Santiago v. Warminster*, 629 F.3d 121, 129 n. 5 (3d Cir. 2010) (defining the two theories of supervisory liability under § 1983, knowledge and acquiescence and policy, practice or custom) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). The civil rights claims against Fischer, Lee, Ricci, Hicks, D'Ilio, Lanigan, Christie, and Murphy in their individual capacities for damages are therefore dismissed without prejudice. Likewise, Plaintiff has not provided sufficient facts suggesting that Hicks, D'Ilio, Lanigan, Christie, or Murphy could provide him with injunctive relief under §1983 or RLUIPA for violations of his religious rights. As such, the official capacity claims for injunctive relief under § 1983 and RLUIPA are likewise dismissed without prejudice as to these Defendants.

In addition to the Defendants listed above, the Court construes Planker's Amended Complaint to allege that other individual Defendants directly violated his constitutional rights under § 1983.

Planker has sued Dr. Musser, the head of mental health at Facility 2 at SWSP. Am. Complaint at ¶ 31. The Court has reviewed the allegations in Count Twenty-Five, ¶¶ 26-271, and will proceed First Amendment free exercise claim against this Defendant based on her decision to place Planker in a mental health unit after he told her about his religious beliefs. Planker has also sued Doctor D'Adonna, who allegedly discriminated against him for religious reasons and

---

[13] Planker also accuses Fischer of "constant light torture" but this allegation is likewise insufficient to state a claim for relief under § 1983.

retaliated against him by intentionally scheduling Planker for mandatory appointments that interfered with his sincerely-held religious beliefs. *Id.* at 34. The Court has reviewed the allegations against this Defendant in Count twenty-five, ¶¶ 272-273 and will proceed a First Amendment free exercise claim against this Defendant.

Plaintiff has sued Anthony Gangi, a prison official at Northern State Prison, who denied Planker musical instruments for religious use while allowing other prisoners to have musical instruments and encouraged Planker get vaccinated against COVID-19 against his religious beliefs in order to get organic food packages but subsequently denied him organic food packages. Am. Complaint at ¶¶ 23, 283. The Court will proceed a First Amendment free exercise claim against this Defendant.

The Court will also proceed claims against the following John/Jane Doe Defendants subject to their identification in discovery. The Court proceeds a First Amendment retaliation claim against John Doe I, a prison official who allegedly had Planker "shipped out" of EJSP in August 2019 in retaliation for filing administrative grievances. Complaint at ¶ at 18. The Court proceeds a First Amendment retaliation and inadequate medical care claim against John Doe II, a prison official at NSP, who refused to provide Planker with his heart medication after making comments about his religion and his interactions with Defendant Hines. *See* Am Complaint at ¶¶ 29, 258-259. The Court proceeds a First Amendment retaliation and inadequate medical care claim against Jane Doe III, a nurse at NSP who took Planker's heart disease medication during a one-week period in September 2021, refused to let Plaintiff see a doctor for medical advice, and refused to return Planker's medication due to Plaintiff's religion and his interaction with religious staff. Am. Complaint at ¶¶ 30, 260-263. The remaining John/Jane Doe Defendants are dismissed <u>without prejudice</u> for failure to state a claim for relief.

The Court also dismisses without prejudice the § 1983 claims against Linda Linen, a prison official at SWSP. Am. Complaint at ¶ 24. Plaintiff alleges that this Defendant acted with deliberate indifference to "plaintiffs" right to practice Asatru and receive equal treatment, and subjected "plaintiffs" to unsafe conditions. *Id.* There are insufficient allegations to state any claims for relief against this Defendant.

Planker has also sued Universal Healthcare or Rutgers, for violations of his rights to religious freedom and violations of his right to medical care. *See* Am. Complaint at ¶ 16. Entities like Rutgers, which provide healthcare services for to the County pursuant to a contract, "cannot be held responsible for the acts of its employees under a theory of *respondeat superior* or vicarious liability." *See Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003) (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Thus, to state a claim for relief, Planker must provide facts showing that CFG had a relevant policy or custom, and that the policy or custom caused the constitutional violation he alleges. *See id.* (citing *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)). Planker has not provided policy or custom allegations, and his claims against Rutgers are dismissed without prejudice.

Planker has also sued JPay, for banning photographs that are "required" by plaintiffs' religion. *See* Am. Complaint at ¶ at 20. Planker alleges in passing that JPay "provides" religious materials, videos and services for some religious groups but not for Asatru prisoners, *see id.*, but many of the allegations against JPay are unrelated to the prisoners religious rights. For instance, JPay also allegedly provides batteries to prisoners that would rupture. JPay also provided products that did not work as described and fail to maintain the kiosk system to allow prisoners to access the grievance system and other JPay functions. JPay also failed to ensure that prisoners

confidential information is kept private from NJDOC staff. JPay also improperly charges prisoners for free literature and denies them access to content within the JPay system. *See* Am. Complaint at ¶ at 20. Plaintiff has sued Securus Technologies under the same theory of liability. *Id.* at 21. In Count Thirteen, Planker details the issues with JPay and Securus, *see* Am. Complaint at 223-236. Even assuming JPay and/or Securus could be sued as state actors, these entities may not be held liable for the violations of their employees or other state actors and, like Rutgers, may only be held liable if the entities had a policy or custom that caused the relevant injuries. Plaintiff has not pleaded a policy or custom claim against either entity, and the Court dismisses the claims against JPay and Securus without prejudice for failure to state a claim for relief.

Finally, in Count Fourteen, *see* Am. Complaint at ¶ 237, Planker sues the United States for keeping cannabis as a Schedule I drug. This claim is frivolous and is dismissed for failure to state a claim for relief. The allegations in the Complaint otherwise involve state (rather than federal) actors and entities, and amendment to the claims against the United States would be futile. As such, this dismissal is with prejudice.

**IT IS, THEREFORE**, on this _____ day of April 2023

**ORDERED** that the Amended Complaint, ECF No. 9-2, shall be FILED; and it is further

**ORDERED** that the motions to amend, ECF No. 12, 13, 16, and for a hearing, ECF No. 15, are DENIED; and it is further

**ORDERED** that the Amended Complaint is proceeded in part and dismissed in part pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B), as explained in this Memorandum and Order; and it is further

**ORDERED** that the Complaint shall PROCEED as to Defendants State of New Jersey/NJDOC, Warren Wilcox, Reverend Dr. Brantley, Reverend Lawrence Atkins, Reverend

Philip Harden, Reverend Hines, Tariq Ameer, Michelle Ricci, Victor Lee, Keisha Fischer, Dr. Mussey, Dr. D'Adonna, Anthony Gangi, John Doe I, John Doe II, and Jane Doe III, with respect to the claims described in this Memorandum and Order; the remaining claims and Defendants are dismissed; and it is further

**ORDERED** that the Clerk of the Court shall provide Plaintiff with copies of the USM-285 form for Defendants State of New Jersey/NJDOC, Warren Wilcox, Reverend Dr. Brantley, Reverend Lawrence Atkins, Reverend Philip Harden, Reverend Hines, Tariq Ameer, Michelle Ricci, Victor Lee, Keisha Fischer, Dr. Mussey, Dr. D'Adonna, and Anthony Gangi; and it is further

**ORDERED** that Plaintiff shall complete the forms for these Defendants <u>only</u> and return them to the Clerk of the Court; and it is further

**ORDERED** that upon Plaintiff's sending of the completed forms to the Clerk of the Court, the Clerk shall issue summons, and the United States Marshal shall serve a copy of the Amended Complaint (ECF No. 9-2), summons, and this Order upon Defendant pursuant to 28 U.S.C. § 1915(d), with all costs of service advanced by the United States; and it is further

**ORDERED** that Defendant shall file and serve a responsive pleading within the time specified by Federal Rule of Civil Procedure 12; and it is further

**ORDERED** that, pursuant to 28 U.S.C. § 1915(e)(1) and § 4(a) of Appendix H of the Local Civil Rules, the Clerk shall notify Plaintiff of the opportunity to apply in writing to the assigned judge for the appointment of pro bono counsel; and it is further

**ORDERED** that, if at any time prior to the filing of a notice of appearance by Defendant(s), Plaintiff seeks the appointment of pro bono counsel or other relief, pursuant to Fed. R. Civ. P. 5(a)

and (d), Plaintiff shall (1) serve a copy of the application by regular mail upon each party at his last known address and (2) file a Certificate of Service;[14] and it is further

**ORDERED** that the Court will **ADMINISTRATIVELY TERMINATE** this case at this time for docket management purposes; the Court retains jurisdiction over this matter, which shall be reopened once Plaintiff's submits the USM forms and service of at least one Defendant is completed;

**ORDERED** that the Clerk of the Court shall serve Plaintiff with copies of this Memorandum and Order via regular mail.

4/28/23

_____
Hon. Madeline Cox Arleo
United States District Judge

---

[14] After an attorney files a notice of appearance on behalf of a Defendant, the attorney will automatically be electronically served all documents that are filed in the case.